IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| GREGG IRVIN GANZ, <br><br> Plaintiff, <br><br> vs. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | CV 17–45–M–JCL <br><br> ORDER |

Plaintiff Gregg Ganz brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Ganz alleges disability since November 18, 2013, and was last insured for Title II benefits on December 31, 2014. Ganz's claim was denied initially and on reconsideration, and he requested an administrative hearing. On September 7, 2016, the Administrative Law Judge (ALJ) issued a decision finding Ganz not disabled within the meaning of the Act. The Appeals Council denied Ganz's request for review, making the ALJ's decision the agency's

-1-

final decision for purposes of judicial review. Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

Ganz was 52 years old at the time of his alleged onset date, and 54 years old at the time of the ALJ's decision.

I.     **Standard of Review**

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193

(*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). This Court "may not substitute its judgment for that of the Commissioner." *Widmark*, 454 F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## II.   Burden of Proof

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at 1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520. The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ will consider whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If not, the ALJ must determine at step two whether the claimant has any impairments that qualify as "severe" under the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ

finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(iii).

If, however, the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

## III. <u>Discussion</u>

The ALJ found at step one that Ganz last met the insured status requirements of the Act on December 31, 2014, and had not engaged in substantial gainful activity since his alleged onset date. At step two, the ALJ found that Ganz had the following severe impairments: osteoarthritis of the knees, status post right hip replacement, degenerative disc disease of the neck and lower back, status post cervical foraminotomies, bilateral rotator cuff tears, and degenerative changes of the right wrist and hand. The ALJ concluded at step three that Ganz did not have an impairment or combination of impairments that met or medically equaled any

impairment described in the Listing of Impairments. The ALJ also found that Ganz's subjective symptom testimony was only partially credible. The ALJ concluded that Ganz had the residual functional capacity to perform a reduced range of light work. Although the ALJ found that Ganz was not capable of performing his past relevant work, he concluded that Ganz was not disabled because there were a significant number of jobs in the national economy that Ganz could perform, including work as a bench assembler, small products assembler, laundry folder, or cashier. (Doc. 4, at 24-37).

A. **Medical Opinions**

Ganz argues the ALJ erred by not giving more weight to opinions provided by two of his treating physicians, and by failing to consider medical evaluations post-dating his date last insured of December 31, 2014.

A treating physician's opinion is entitled to greater weight than that of an examining physician on the basis that he has a "greater opportunity to observe and know the patient." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). An examining physician's opinion in turn "carries more weight than a reviewing physician's." *Holohohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). The weight given a treating or examining physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the

-5-

record. 20 C.F.R. § 404.1527(d)(2).

The ALJ may disregard a treating physician's opinion whether or not that opinion is contradicted. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). To discount the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). The ALJ may accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751.

    1.    <u>Dr. Makman</u>

Ganz argues the ALJ erred by not giving more weight to statements from his treating orthopedist, Dr. Stanley Makman. The first medical records from Dr. Makman are dated December 13, 2013, approximately one month after Ganz's alleged onset date. (Doc. 4, at 289). Dr. Makman explained that he had seen Ganz in the past for shoulder, hip, neck, and knee pain, and noted that in 2010 an MRI arthrogram showed that Ganz had massive retracted atrophied rotator cuff tears bilaterally. (Doc. 4, at 294). Dr. Makman wrote that Ganz had end-stage rotator cuff arthropathy in both shoulders, severe osteoarthritis of the left knee based on

x-rays from five years earlier, and degenerative spinal disease. Dr. Makman indicated that Ganz could not "continue long term to work physical work" as he had in the past for his construction and cleaning/restoration business. (Doc. 4, at 294).

The next item in the record from Dr. Makman is a May 2, 2014, letter stating that Ganz had multiple musculoskeletal problems, had undergone bilateral hip replacements, and had "a significant disability." (Doc. 4, at 215). The next records from Dr. Makman reflect that he performed a left total knee arthroplasty in June 2015. (Doc. 4, at 356, 368). By August 2015, Ganz was doing well and was to follow up with Dr. Makman one year later. (Doc. 4, at 336). Then, in July 2016, Dr. Makman wrote another letter summarizing Ganz's medical history and stating that he "has significant limitations and difficulty performing any physical work." (Doc. 4 at 650).

The ALJ considered Dr. Makman's opinions regarding the extent of Ganz's disability but gave them minimal weight for several reasons.[1] First, the ALJ discounted Dr. Makman's statements because they were "vague and nonspecific." (Doc. 4, at 32). Dr. Makman only generally concluded that Ganz could no longer

---

[1] Because Dr. Makman's opinions were contradicted by the state agency physicians, the ALJ could reject it for specific and legitimate reasons. *See e.g. Bray v. Commissioner*, 554 F.3d 1219, 1228 n. 8 (9th Cir. 2009).

perform physical work and did not identify any specific abilities or limitations. Consistent with Dr. Makman's opinion, the ALJ found that Ganz was not capable of performing his past relevant work as a sandblaster or construction laborer. To the extent Dr. Makman stated that Ganz was disabled due to "significant limitations," the ALJ allowably discounted his opinions because they were vague and lacked specificity. See *Chaudry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.")

The ALJ further discounted Dr. Makman's opinions as to the disabling severity of his impairments because it was not consistent with the objective medical evidence. As the ALJ correctly pointed out, for example, Dr. Makman wrote at one point that Ganz had undergone "bilateral hip replacements" when in fact he had only had a right hip replacement and a 2015 left hip x-ray showed no evidence of acute bone injury or significant arthritic changes. (Doc. 4, at 298, 489). This was a legitimate reason for giving Dr. Makman's opinion less weight.

The ALJ also found that Dr. Makman's opinion that Ganz was entirely disabled was not consistent with evidence of Ganz's daily activities during the period at issue. (Doc. 4, at 33). In particular, the ALJ pointed out that Ganz

continued performing medium to heavy level work in his construction, cleaning, and restoration businesses – albeit with difficulty – after his alleged onset date. (Doc. 4, at 33, 294, 420). This too was a legitimate reason for discounting Dr. Makman's opinion.

Finally, to the extent Dr. Makman wrote that he believed Ganz was entitled to Social Security disability benefits, the ALJ permissibly gave his opinion little weight because he was not a vocational expert and the issue of whether a claimant is disabled is a finding reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1)-(3) (treating source opinions on issues that are reserved to the Commissioner are never entitled to any special significance); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

These were specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Makman's opinions.

2. Dr. Jenko

Ganz next argues the ALJ did not provide specific and legitimate reasons for rejecting the opinion of his primary care treating physician, Dr. Thomas Jenko.[2] In October 2014 – approximately two months before Ganz's date last

---

[2] Because Dr. Jenko's opinion was contradicted by the state agency physician, the ALJ could reject it for specific and legitimate reasons. *See e.g. Bray v. Commissioner*, 554 F.3d 1219, 1228 n. 8 (9th Cir. 2009).

insured – Dr. Jenko performed a disability examination and completed a written report. Dr. Jenko explained that after years of heavy physical labor and substantial abuse to his joints, Ganz was suffering from progressive degenerative arthritis in multiple joints. Dr. Jenko found it was unlikely that Ganz would be able to return to the manual labor occupations for which he was trained, and was "probably not a candidate for further educational training." (Doc. 4, at 328). As a result, Dr. Jenko believed that Ganz had "permament disabilities and warrant[ed] a disability rating." (Doc. 4, at 328). Dr. Jenko saw Ganz roughly a dozen times over the course of the next two years, and in August 2016 completed form indicating that as of November 2014, Ganz was limited to sedentary work. (Doc. 4, at 671).

Ganz considered Dr. Jenko's October 2014 report but gave it little weight to the extent he found that Ganz was disabled in part because his opinion was not consistent with the results of the musculoskeletal examination he performed. That examination showed that Ganz had some diffuse tenderness but did not have any spasms, Ganz's deep tendon reflexes and motor and sensory functions in his arms and legs were all normal. (Doc. 4, at 328). Dr. Jenko further observed that Ganz's back showed only vague tenderness, but he had some stiffness and trouble with flexion greater than 60 degrees. (Doc. 4, at 328). The ALJ reasonably determined

-10-

that these finding were not consistent with Dr. Jenko's opinion to the extent he indicated Ganz was disabled.

As he did with respect to Dr. Makman's opinion, the ALJ decided that Dr. Jenko's opinion that Ganz was entitled to permanent disability status was not entitled to a great deal of weight because it was vague as to any specific abilities and limitations, and because the issue of disability is a finding reserved for the Commissioner. Both of these were specific and legitimate reasons for discounting Dr. Jenko's report in favor of those provided by the state agency physicians, who specifically assessed Ganz's abilities and limitations.

The ALJ further noted that Dr. Jenko's opinion was based in part on his review of Dr. Makman's May 2014 opinion, which incorrectly stated that Ganz had undergone bilateral hip replacements. Dr. Jenko explained that he had reviewed Dr. Makman's opinion as to Ganz's "significant disability" and records confirming that Ganz had several musculoskeletal problems including "hip replacements." (Doc. 4, at 328). The ALJ legitimately discounted Dr. Jenko's opinion in part because it appeared he "lacked familiarity" with Ganz's impairments and the fact that he had not undergone bilateral hip replacments.

As to the form Dr. Jenko, completed in August 2016, the ALJ additionally noted it was nothing more than a check mark form with no supporting explanation

whatsoever other than a reference to a November 7, 2014, examination that does not appear to have taken place. The first item in the record from Dr. Jenko is his report of the disability examination he performed on October 21, 2014. There is no record of any examination from November 2014, and it appears he did not see Ganz again until February 2015 for gastroenterological issues. (Doc. 4, at 433). Presumably, Dr. Jenko meant to refer to his October 21, 2014, report. But regardless, the ALJ permissibly discounted Dr. Jenko's August 2016 opinion because it was conclusory and not supported by any specific findings or explanation other than reference to the disability examination report he had prepared some two years earlier.

To the extent Dr. Jenko stated Ganz was disabled and limited to sedentary work, the Court finds that the ALJ provided specific and legitimate reasons for discounting his opinion and reasonably relied instead on opinions provided by the state agency physicians who specifically assessed Ganz's functional limitations.

### 3. Post-Insured Status Evidence

Ganz maintains the ALJ erred by not considering medical evidence post-dating his date last insured of December 31, 2014. But review of the ALJ's decision shows otherwise. As discussed above, the ALJ considered the post-insured status opinions written by Ganz's doctors, but rejected them for a variety

-12-

of reasons. The ALJ likewise considered the post-insured status medical records, but found they did not establish Ganz was disabled during the relevant period.

**B.      Subjective Symptom Testimony**

Ganz argues the ALJ did not provide sufficiently clear and convincing reasons for discounting his subjective symptom testimony. Where, as here, a claimant has produced "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged... and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal citations and quotations omitted).

The ALJ agreed that Ganz's allegations of shoulder and neck pain were consistent with evidence that he had bilateral atrophied rotator cuff tears, but found the type of treatment he received during the period at issue was not consistent with the alleged severity of his pain. The ALJ found it particularly significant that Ganz only saw his treating orthopedist, Dr. Makman, one time during the period at issue. (Doc. 4, at 32). The record indeed reflects that the December 13, 2013, appointment described above was the only time Dr. Makman saw Ganz during the period between his November 2013 alleged onset date and

-13-

December 2014 date last insured. (Doc. 4, at 294). Most of Ganz's medical examinations during the year after his alleged onset date related to a hernia on his right side, which was successfully treated. Ganz did not argue he was unable to afford medical care or otherwise explain why he did not seek more frequent orthopedic treatment during that period. Although Dr. Makman saw Ganz somewhat more frequently during the two year period after his date last insured, the ALJ permissibly found that Ganz's failure to seek more aggressive treatment for an entire year after his alleged onset date substantially undermined his testimony that he was experiencing chronic, daily, and disabling pain during that period. See *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding the severity of an impairment"); *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (subjective pain testimony properly discredited where claimant complained of severe pain but received minimal and conservative treatment).

The ALJ further found Ganz's testimony was less than entirely believable in part because the objective medical evidence did not support the level of pain and limitations he alleged. (Doc. 4, at 32). The ALJ pointed specifically to the results of Dr. Jenko's October 2014 consultative disability examination, which showed

that Ganz had only vague and diffuse tenderness, did not have any spasms and his deep tendon reflexes and motor sensory functions in his arms and legs were normal. The ALJ also noted that when Dr. Dana Ducote examined Ganz in May 2014 for his hernia, his gait and grip strength were both normal. (Doc. 4, at 299). The ALJ reasonably found that the objective medical evidence did not fully support Ganz's testimony as to the extent of his musculoskeletal pain. *See e.g. Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) (the lack of objective medical evidence is an appropriate factor for the ALJ to consider in evaluating credibility); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.")

Finally, the ALJ found that Ganz engaged in activities that were not consistent with his allegations of debilitating pain. Ganz testified that he suffered from chronic pain day and night, and had arthritic spurs which caused pain throughout his body, making it impossible for him to bend and impairing his balance and ability to walk. The ALJ found this testimony was not entirely consistent with the fact that Ganz reported daily activities consisting of preparing light meals, doing laundry, loading and unloading the dishwasher, driving, and shopping. While these activities are not indicative of the ability to work on a

sustained basis, the ALJ reasonably found they were not entirely consistent with the Ganz's allegations of debilitating pain.

Reading the ALJ's decision as a whole, the Court is satisfied that he cited sufficiently clear and convincing reasons for discounting Ganz's subjective symptom testimony.

## C.   Vocational Expert

Ganz contends the ALJ's residual functional capacity assessment was flawed because it did not incorporate all of his limitations. In particular, he claims the ALJ erred by finding him capable of frequently reaching forward and laterally with both upper extremities. Ganz argues this finding was not supported by substantial evidence because the record is clear that he had massive retracted atrophied rotator cuff tears bilaterally, and his testimony was that he has great difficulty with reaching as a result. Ganz further argues the ALJ's finding that he would only need to alternate between sitting, standing, and walking as allowed by normal breaks every two hours was not supported by substantial evidence. Again, Ganz points to his own testimony which was that he can sit for "maybe 20 minutes to half-hour at the most" and can stand for only half an hour at at ime. Tr 53. As discussed above, however, the ALJ appropriately evaluated Ganz's subjective testimony and weighed the medical evidence, including the evidence of Ganz's

-16-

rotator cuff tears. In the residual functional capacity assessment, the ALJ found that Ganz could not lift either of his arms overhead, but found based on the opinions of the state agency physicians that Ganz was capable of frequently reaching forward and laterally with both arms. The opinions of the state agency physicians constitute substantial evidence to support the ALJ's finding.

Substantial evidence of record supports the ALJ's residual functional capacity assessment, which adequately accounted for Ganz's limitations. *See Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (the ALJ need not include limitations not supported by substantial evidence). Ganz's residual functional capacity was in turn reflected in the hypothetical question he posed to the vocational expert.

## IV. Conclusion

For the reasons set forth above,

IT IS ORDERED that the Commissioner's decision is affirmed.

DATED this 2nd day of January, 2018

Jeremiah C. Lynch
United States Magistrate Judge